```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,



V.                                        CRIMINAL ACTION
                                          NO. 21-20405
NOE GARZA,

                    Defendant.

_____/

                    MOTION TO SUPPRESS HEARING
            BEFORE THE HONORABLE MATTHEW F. LEITMAN
                  United States District Judge
                       600 Church Street
                        Flint, Michigan
                   Wednesday, February 9, 2022


APPEARANCES:
JULES DePORRE
United States Attorney's Office.
600 S. Church Street
Flint, MI 48502
810-766-5031
Email: jules.deporre@usdoj.gov
          On behalf of Plaintiff.

CHARLES O. LONGSTREET, II
Longstreet Law Firm PLLC
18971 Livernois
Detroit, MI 48221
313-288-0103
Email: clongstreet2@longstreetlawfirmpllc.com
          On behalf of Defendant.


                          - - -

                     Andrea E. Wabeke
        Certified Realtime Reporter • Official Court Reporter
               federalcourttranscripts@gmail.com
```

# I N D E X

**Proceeding**                                                    **Page**

STEVEN FISHER.

Cross Examination(Cont'g) by Mr. Longstreet......     6

Redirect Examination by Mr. DePorre..............    30

# E X H I B I T S

| Exhibit No. | Offered | Received |
|-------------|---------|----------|
| Government Exhibit 20..... | 27 | 27 |

Motion to Suppress hrg.                        2/9/2022

1                    Flint, Michigan

2                    February 9, 2021

3                    9:47 a.m.

4                         -   -   -   -

5          **CASE MANAGER:**  The United States District Court for

6    the Eastern District of Michigan is now in session, the

7    Honorable Mathew F. Leitman presiding.

8          You may be seated.

9          The Court calls case number 21-20405, the United

10   States of America versus Noe Garza.

11         Counsel, please state your appearances for the

12   record.

13         **MR. DePORRE:**  Good morning, your Honor.  Jules

14   DePorre, appearing on behalf of the United States.

15         **THE COURT:**  Good morning.

16         **MR. LONGSTREET:**  Good morning, your Honor.  May it

17   please this Honorable Court.  Charles Oliver Longstreet, II,

18   P-63205, appearing on behalf of Mr. Noe Garza, who is seated

19   and appears to my left.

20         **THE COURT:**  Good morning, and welcome to both of you.

21         We're here for a continuation of the evidentiary

22   hearing on the motion to suppress that Mr. Longstreet filed.

23         My memory is not great, but I think when we last

24   broke, there was some question about whether Ms. Montpas had

25   received all of the reports, and were you going to get into

Motion to Suppress hrg.                    2/9/2022

1  that, or am I confusing this with one of the other evidentiary

2  hearings I have going?

3          **MR. DePORRE:**  No, your Honor.  That is correct.  We

4  were in the middle of cross examination.  I had previously done

5  direct examination with Officer Steven Fisher, who, for the

6  record, is seated to my right.  If you would like him to leave

7  the room briefly before we recall him to the stand, we

8  certainly can, but the sort of stage that we were at was he was

9  doing cross -- Mr. Longstreet was doing cross examination and

10  he had a report that was different from the report that the

11  officer had brought with him that day to refresh his

12  recollection.

13          What we did is, since then, on January 12th, we

14  produced additional discovery.  We had a report that was

15  printed December 24th, 2021, which was furnished to Defense

16  counsel, along with some other discovery items, including a --

17  basically a trail of how that report system had been -- who had

18  had access to the report system and then also a policy for the

19  inventory of vehicles for Metro PD.

20          **THE COURT:**  Okay.  Mr. Longstreet, do you believe you

21  have everything that you would need to continue the cross

22  examination now?

23          **MR. LONGSTREET:**  I do.

24          **THE COURT:**  Is there anything we need to do before we

25  continue?

Motion to Suppress hrg.                    2/9/2022

1       **MR. DePORRE:**  I just have one other item for the

2   record today.  Your Honor, we had subpoenaed two witnesses to

3   appear today.  Previously, we had subpoenaed three for the

4   original hearing.  They were Officer Steven Fisher, Lieutenant

5   Johnson, Todd Johnson, and then Officer Ann Davies.  We knew

6   that Lieutenant Johnson would not be able to appear for today's

7   hearing so we did not subpoena him for today's hearing.

8   However, we did subpoena Officer Ann Davies, but,

9   unfortunately, she had a Covid exposure in the last couple days

10  and became symptomatic this morning.  So she was not able to

11  appear today.  She would not have cleared the Court's

12  screening, and so she is -- she is not available for testimony

13  today.  I spoke with Mr. Longstreet and I let him know about

14  that as well.

15      **THE COURT:**  Is she somebody that you guys need?

16      **MR. DePORRE:**  I intended to call her, depending on

17  how cross examination was going to go today or what issues were

18  raised.  I can't say that she's definitely someone we need,

19  though.

20      **THE COURT:**  Does it make sense then to take it one

21  step at a time to resume and complete the cross examination of

22  our first witness and then talk about what we think our next

23  steps are?

24      **MR. DePORRE:**  I think that's an excellent plan, and I

25  think it's -- that's a great plan.

Motion to Suppress hrg.                    2/9/2022

1          THE COURT:  Okay.  Mr. Longstreet, does that plan

2    work for you?

3          MR. LONGSTREET:  It most certainly does work for me,

4    yes.

5          THE COURT:  Okay.  Let's bring our witness back and

6    go ahead.

7                         STEVEN FISHER
     Was thereupon *recalled* as a witness herein, and, after having
8    First been duly sworn at about 9:44 A.M., was examined and
     Testified as follows:
9          THE COURT:  Okay.  Officer, welcome back.  Make

10   yourself comfortable.  If you don't mind, would you please take

11   off your mask, and, as you did last time, please keep your

12   voice up and speak slowly, and we will work our way through

13   this.  Nice to see you again.

14         THE WITNESS:  Yes, sir.

15         THE COURT:  Okay.  Mr. Longstreet, go ahead.

16         MR. LONGSTREET:  Thank you.

17                  CROSS EXAMINATION(continuing)

18   BY MR. LONGSTREET:

19   Q.   Again, good morning, Officer.

20   A.   Good morning.

21   Q.   Again, state your name for the record?

22   A.   Officer Steven fisher.  S-t-e-v-e-n.  F-i-s-h-e-r.

23   Q.   I see you shaved your mustache or beard?

24   A.   I did, yes.

25   Q.   And were you so employed with the Metro Police Department

Motion to Suppress hrg.                    2/9/2022

1   on the date of December 1st, 2020; is that correct -- excuse

2   me, November 26th, 2020; is that correct?

3   **A.**   Yes, sir.

4   **Q.**   Okay.  And on that particular day, you testified

5   previously you went to the Meijer's store to investigate

6   shoplifting, correct?

7   **A.**   I was at this Meijer's store already on an unrelated

8   investigation that likely would have been shoplifting, but it

9   was not.

10   **Q.**   All right.  So that morning at about 9:00 or at 9:30, you

11   were dispatched to the Meijer's location to loss prevention,

12   correct, on this particular day?

13   **A.**   I don't know if I was dispatched or not.  It might have

14   been a follow up.

15   **Q.**   Okay.  All right.

16        At a certain point, you spoke with -- on that particular

17   day, you spoke to Jodi Montpas of the loss prevention

18   supervisor of the Meijer's store; is that correct?

19   **A.**   Correct.

20   **Q.**   And you spoke to her as a part of an investigation into a

21   shoplifting that was occurring at the store on that day,

22   correct?

23   **A.**   It was brought up while I was making contact with her,

24   yes.

25   **Q.**   And during this contact with Ms. Montpas, she indicated

Motion to Suppress hrg.                    2/9/2022

1   that, at a certain point, that the suspect had left the store

2   and was going to a gray -- excuse me, a white Pontiac Grand

3   Prix, correct?

4   **A.**   Correct, at some point, yes.

5   **Q.**   Okay.  Now, at a certain point, prior to you going to that

6   white Grand Prix, you spoke to loss prevention, correct?

7   **A.**   I was with Ms. Montpas.  We -- myself --

8   **Q.**   No, excuse me.

9        The question is:  Did you talk to loss prevention prior to

10  walking to the white Grand Prix?

11  **A.**   Yes, sir.

12  **Q.**   Okay.  And when you spoke to loss prevention, prior to

13  walking to the white Grand Prix, you had had a description of a

14  suspect, correct?

15  **A.**   That's correct.

16  **Q.**   Okay.  And the description that you had was of a white

17  male, correct?

18  **A.**   Correct.

19  **Q.**   All right.  Now, is it true to say, sir, that prior to

20  walking to the white Grand Prix, that you were told by

21  Ms. Montpas that they did not observe the person conceal

22  anything prior to walking to the white Grand Prix?

23  **A.**   That's not my recollection.

24  **Q.**   Okay.

25        Would reading Ms. Montpas' report refresh your

Motion to Suppress hrg.                          2/9/2022

1   recollection as to the information you had about the suspects

2   prior to walking to the car?

3   **A.**   Possibly.

4   **Q.**   All right.  One last question before I present this to

5   you, you walked to the car with Sergeant Johnson, correct?

6   **A.**   I wouldn't say we were next to each other the entire time,

7   taking different paths through the parking lot.

8   **Q.**   Let me be more specific.  Were you accompanied by Johnson

9   when you walked to the white Grand Prix?

10  **A.**   I suppose so, yes.

11  **Q.**   And were you working together --

12  **A.**   No.

13  **Q.**   -- with Sergeant Johnson at the time?

14  **A.**   No.

15  **Q.**   Okay.

16          **MR. LONGSTREET:**  I just need a moment, Judge.

17          **THE COURT:**  Take your time.

18          **MR. LONGSTREET:**  Thank you.

19  BY MR. LONGSTREET:

20  **Q.**   Have you, during this investigation, read the narrative

21  report of Meijer's loss prevention at any point?

22  **A.**   Yes.

23  **Q.**   Okay.  Loss prevention.

24          **MR. LONGSTREET:**  May I approach the witness?

25          **THE COURT:**  Sure.

Motion to Suppress hrg.                    2/9/2022

1  **BY MR. LONGSTREET:**

2  **Q.**   Sir, can you please tell me what I've handed you, for the

3  record, by the document, please?

4  **A.**   It says, "incident narrative," appears to be from Meijer's

5  loss prevention.

6  **Q.**   Thank you.

7       Sir, can you read that document to yourself?

8            **THE COURT:**  Does it have a date or author that you

9  could also help us with?

10            **THE WITNESS:**  Would you like me to answer you right

11  now, sir?

12            **THE COURT:**  Please.

13            **THE WITNESS:**  It says in the narrative it's written

14  by Adam Stokes.

15  **BY MR. LONGSTREET:**

16  **Q.**   Is that a person of Meijer's loss prevention?

17  **A.**   Yes, sir.

18  **Q.**   All right.

19       And have you had an opportunity to review the loss

20  prevention documents from Meijer's as a part of your

21  investigation into this particular matter?

22  **A.**   My investigation was complete before this report was

23  received.

24  **Q.**   But you read it as part of your job?

25  **A.**   I have, yes.

USA v Garza, Case No.21-20405

Motion to Suppress hrg.                    2/9/2022

1  **Q.**   Okay.  Now, on the bottom of the document, do you see

2  where it says that "Ms. Montpas told Johnson we did not see

3  concealment prior to Johnson walking to the car"?  Do you see

4  that at the bottom paragraph, highlighted, clear as day?

5  **A.**   There's two highlighted sections, sir.

6  **Q.**   The bottom highlight?

7  **A.**   The bottom highlights.

8  **Q.**   You were told, prior to walking to the car, no one saw

9  concealment?

10       **THE COURT:**  Mr. Longstreet, can I ask do you mind

11  staying on the microphone?  I want to make sure I can hear your

12  question loud and clear.  I'm getting old; my hearing is going.

13       **THE WITNESS:**  The bottom highlighted section doesn't

14  read that.  The top highlighted section talks about that.  Let

15  me read it real quick.

16  **BY MR. LONGSTREET:**

17  **Q.**   It does say you were told that no one saw concealment

18  prior to walking to the white Grand Prix?

19  **A.**   That's not what it says, sir.

20  **Q.**   That's not -- what does it say?

21  **A.**   It says -- again, and this is a report from Adam Stokes,

22  saying that "Sergeant Johnson was told by Ms. Montpas that they

23  did not have concealment of the items."

24  **Q.**   Thank you.

25       And could you review --

Motion to Suppress hrg.                    2/9/2022

1          **MR. LONGSTREET:**  May I approach?

2          **THE WITNESS:**  Well, no.  Concealment means just what

3     it says, concealment.  It means putting something --

4     **BY MR. LONGSTREET:**

5     **Q.**   Hiding something?

6     **A.**   Hiding something.

7     **Q.**   In your experience, sir, hiding something means that they

8     were hiding it to walk out the store, correct?

9     **A.**   Could be hiding while they were in the store, sir.

10    **Q.**   Okay.  But also in order to have a theft, the items have

11    to be somewhat concealed, right, hidden from view?

12    **A.**   Not necessarily.

13    **Q.**   But in your experience, you know that shoplifters --

14    because we talked about your experience in shoplifting?

15    **A.**   Correct.

16    **Q.**   And stakeouts and outlooks and we talked about that,

17    right?

18    **A.**   We did.

19    **Q.**   So, in your experience, we know that thieves conceal what

20    they steal, right?

21    **A.**   Not exclusively, sir.

22    **Q.**   Okay.

23         You're just not going to answer any of my questions

24    directly?

25         **THE COURT:**  That was a direct answer.

USA v Garza, Case No.21-20405

Motion to Suppress hrg.                    2/9/2022

1          **MR. LONGSTREET:**  Okay.  Very well.  I'll move on,

2     Judge.

3     **BY MR. LONGSTREET:**

4     **Q.**    Now, you indicated during cross -- I mean during direct

5     examination on our first date that there was only one suspect

6     in the car; is that correct?

7     **A.**    No, sir.  There's two in the car.

8     **Q.**    Okay.

9          Did you testify there was only one suspect?

10    **A.**    No.

11    **Q.**    Okay.

12         You didn't testify to that during direct examination --

13    **A.**    No.

14    **Q.**    -- that there was only one suspect in the car and that

15    suspect was Garza?  You didn't testify to that during direct

16    examination on the first date you testified?

17    **A.**    No, I did not.

18    **Q.**    All right.

19         Now, there's two suspects in the car, correct?

20    **A.**    That's correct.

21    **Q.**    All right.

22         And your report indicates that you knew who the theft

23    suspect was, correct?

24    **A.**    No.

25         **MR. LONGSTREET:**  May I approach the witness?

Motion to Suppress hrg.                          2/9/2022

1          **THE COURT:**  Yes.  You do not need to keep asking.

2          **MR. LONGSTREET:**  Pardon me?

3          **THE COURT:**  You do not need to keep asking.  You can

4    approach when you need to.

5    **BY MR. LONGSTREET:**

6    **Q.**   Sir, I'm handing you a document.  Can you please tell us

7    what this document is, sir?

8    **A.**   This is my police report.

9    **Q.**   Okay.

10         And in that police report, does it indicate there was two

11   suspects?

12   **A.**   Yes, it does.

13   **Q.**   Okay.

14         And does it indicate that the suspect that was stealing

15   was, and it's marked up, correct?

16   **A.**   Yes.

17   **Q.**   And that suspect is not Garza, correct?

18   **A.**   The problem is I did not know that at the time.

19   **Q.**   Respectfully, sir, that person is not Garza, correct?

20   **A.**   I think --

21   **Q.**   It's yes or no question, sir.

22   **A.**   Mr. Garza was not in the store, no.

23   **Q.**   And Mr. Garza was not the suspect you were looking for,

24   was he?

25   **A.**   He was not the -- he did not match the description of the

Motion to Suppress hrg.                    2/9/2022

1  suspect.

2  **Q.**   Thank you.

3       And, sir, your report says, specifically, "two suspects,

4  later identified as Noe Garza and 'redacted' the rear driver's

5  side.  'Redacted person' was the suspect who was observed

6  concealing merchandise."

7       That's what your report says, correct?

8  **A.**   That is what it says, yes.

9  **Q.**   And that suspect was not Garza, correct?

10 **A.**   Again, it's a timeline issue that we're I guess arguing

11 about here.

12        **MR. LONGSTREET:**  I will respectfully ask that the

13 Court instruct the witness to answer my question directly.

14        **THE COURT:**  Was Garza the person in the store?

15        **THE WITNESS:**  No, sir, he was not the person in the

16 store.

17 **BY MR. LONGSTREET:**

18 **Q.**   Thank you.

19 **A.**   But it's -- the police report, for clarity, might explain

20 who somebody is early on before in realtime at the time of the

21 incident that I knew who these people were, how they were

22 affiliated with the incident.

23 **Q.**   Sir, to be more specific, you had, at the time that you

24 walked to the white Grand Prix, Mr. Garza wasn't a suspect,

25 correct?

Motion to Suppress hrg.                           2/9/2022

1  **A.**  I did not know that.

2  **Q.**  Okay.  Mr. Garza wasn't in the store, correct?

3  **A.**  I did not know that.

4  **Q.**  No one gave you a description of Garza, correct?

5  **A.**  I was given a description of a person who was then told to

6  me to have entered the white Grand Prix.  When I approached the

7  white Grand Prix, Mr. Garza was the only person that I saw.

8  **Q.**  Okay.  He didn't meet the description?

9  **A.**  No, and --

10 **Q.**  Thank you.

11     You had no indication or information that Mr. Garza was a

12 lookout, correct?

13 **A.**  Again, it's based on my training and experience --

14 **Q.**  Respectfully, sir, you had -- listen to my question.  You

15 had no information that suggested Garza was a lookout, correct,

16 sir?

17 **A.**  No.

18 **Q.**  All right.

19     You had no information that Mr. Garza was ever outside of

20 the white Grand Prix, correct?

21 **A.**  No.

22     **THE COURT:**  Just so we're clear, do you understand

23 how this record now reads?  You asked him, "Correct?"  And his

24 answer was "no."  So he did not agree with either of your two

25 questions.

USA v Garza, Case No.21-20405

1          **MR. LONGSTREET:** I understand.

2          **THE COURT:** Just if we're trying to make a record

3   where we're all -- I think I understand what he meant. I think

4   you do, but just so the record is clear, it's probably

5   worthwhile to ask these questions again to make sure that if

6   your question is "Correct?" and you want him to agree with you,

7   that his answer is "yes" rather than "no."

8          **MR. LONGSTREET:** I understand, sir. Thank you.

9   **BY MR. LONGSTREET:**

10  **Q.** I'm asking you the question again, sir: Again,

11  Mr. Garza -- excuse me, I forgot the question. Let me go back.

12         **THE COURT:** I didn't mean to interrupt you,

13  Mr. Longstreet. I just want to make sure that we're

14  eliminating possible ambiguities in the record.

15         **MR. LONGSTREET:** I do understand what you mean.

16  That's why I'm thinking of a way to reask the question.

17         **THE COURT:** Okay. Thank you.

18  **BY MR. LONGSTREET:**

19  **Q.** Again, you had no information that Mr. Garza was a

20  lookout?

21  **A.** I had no information of that.

22  **Q.** Thank you. You had no information that Mr. Garza was

23  outside of the vehicle at any point?

24  **A.** No information of that.

25  **Q.** Thank you.

Motion to Suppress hrg.                    2/9/2022

1    You had no information that Mr. Garza had stolen anything,

2  correct?

3  **A.**   Information that a person that entered the white Grand

4  Prix had stolen items.

5  **Q.**   But you knew who that was, correct?

6  **A.**   No.

7  **Q.**   Okay.  And in your report, you didn't say that the person

8  that was still in the car was -- "Blank was a suspect who was

9  observed stealing merchandise"?

10  **A.**   That's a clarification for that part of my report.  I did

11  not know that at the time, when I was approaching the vehicle,

12  and, again, when I approached the vehicle I only saw Mr. Garza.

13  **Q.**   So you didn't say in your report when you approached the

14  vehicle, that it was occupied by two male subjects?

15  **A.**   Sir, if it says that, it's just for clarification issues

16  or to clarify for --

17  **Q.**   This document --

18  **A.**   -- the reader of the report.

19  **Q.**   This document is written as a summary of what happened on

20  that day; is that correct?

21  **A.**   Correct, sir, summary.

22  **Q.**   Okay.  And you're full and complete, when you use this --

23  when you put this information in this document, correct?

24  **A.**   It's impossible to be full and complete.  Again, it's a

25  summary.

Motion to Suppress hrg.                    2/9/2022

1  **Q.**   And you -- and you, at a certain point, anticipate you

2  possibly using this document to refresh your recollection in

3  the future, correct?

4  **A.**   That's correct.

5  **Q.**   Okay.  Because you may not remember all the facts from a

6  year ago, correct?

7  **A.**   Correct.

8  **Q.**   So this document is an important document in regard to

9  what happened on that day, correct?

10  **A.**   Yes, sir.

11  **Q.**   And this tells anyone else who wasn't there what happened,

12  correct?

13  **A.**   Correct.

14  **Q.**   Okay.  And in this document, it says you approached the

15  vehicle with two occupants.  The redacted person was the

16  suspect who was observed stealing, not Garza, correct?

17  **A.**   Correct.

18  **Q.**   So, you arrest Garza for shoplifting, yes?

19  **A.**   Yes.

20  **Q.**   Now, at a certain point, the passenger of the vehicle is

21  questioned, correct?

22  **A.**   Yes.

23  **Q.**   He's taken to Meijer's loss prevention office to be

24  questioned, correct?

25  **A.**   No.

Motion to Suppress hrg.                    2/9/2022

1  **Q.**   Okay.  Do you recall where the person was taken to be

2  spoken to about what happened?

3  **A.**   Yes, to my police department.

4  **Q.**   Okay.  To your police department.

5      Are you aware or do you know -- never mind.  You wouldn't

6  be able to testify to that.

7      Strike that.

8      All right.

9      I would like to talk to you now in regard to this

10  secondary inventory search; do you recall that?

11  **A.**   Yes, sir.

12  **Q.**   And in your report that you drafted, you called this a

13  secondary inventory search; is that correct?

14  **A.**   Correct.

15  **Q.**   All right.

16      Now, this inventory search was conducted only after you

17  received information from a co-occupant of the vehicle, turned

18  informant, that there was a possible firearm in the car,

19  correct?

20  **A.**   Yes, sir.

21  **Q.**   All right.

22      At the time you received that information, the vehicle is

23  at the towing yard, correct?

24  **A.**   Yes.

25  **Q.**   Okay.  Not occupied by Mr. Garza, because he's

USA v Garza, Case No.21-20405

Motion to Suppress hrg.                    2/9/2022

1  incarcerated at the time, correct?

2  **A.**   Correct.

3  **Q.**   Not readily moveable, meaning it hasn't been moved at any

4  point, correct?

5  **A.**   Not correct.

6  **Q.**   Okay.  It was in a police tow yard and the police

7  authority?

8  **A.**   No, sir.

9  **Q.**   It was not under the police authority in the tow yard?

10           **THE COURT:**  Isn't the testimony that it was at this

11  private unenclosed towing lot in some relatively rural area?

12           **MR. LONGSTREET:**  I don't recall what the testimony

13  was and so I'm trying to get it out.  I believe it was towed

14  by -- for the police.  It was in a tow yard.  It was unattended

15  by itself, not really moveable without the operator.  My point

16  was it wasn't a readily moveable vehicle that required a search

17  warrant is my point, but I'm getting to that point.  I'm

18  developing that.

19           **THE COURT:**  Okay.

20  **BY MR. LONGSTREET:**

21  **Q.**   Now, sir, at a certain point, this car -- the occupant

22  didn't have the keys to be able to move it right away, correct,

23  the owner of the vehicle?

24  **A.**   The owner, no, sir.

25  **Q.**   Okay.

Motion to Suppress hrg.                    2/9/2022

1          **THE COURT:**  And by a certain point, you mean while
2    it's sitting in the tow yard?
3    **BY MR. LONGSTREET:**
4    **Q.**   While it's sitting in the tow yard?
5    **A.**   Correct.
6    **Q.**   Okay.  Now, the vehicle, at that point, wasn't being
7    inventoried to protect the police from frivolous or false
8    claims of theft and/or missing items?
9          Did you understand the question?
10   **A.**   I wouldn't agree with that.
11   **Q.**   So you went back, specifically, to make sure that all of
12   Mr. Garza's items were safely in the car at the time, that's
13   what you went back for?
14   **A.**   I would say it's liability for the police department to
15   tow a vehicle that is unsecured that may contain a firearm.
16   **Q.**   So your sole purpose was to make sure you were going to
17   inventory everything in the car and make sure the first time
18   you did an inventory search you didn't miss anything for the
19   second one, correct?
20   **A.**   Well, the new information was that there was potentially a
21   firearm in the engine compartment of the vehicle.
22   **Q.**   Got you.
23   **A.**   Which is not an area typically known to contain property.
24   **Q.**   So you were going to investigate the information you
25   obtained from a new informant in regard to where a gun could be

Motion to Suppress hrg.                    2/9/2022

1   found in inside the car, correct?

2   **A.**   I had information that property, a firearm specifically,

3   might be in the engine compartment.

4   **Q.**   And that --

5   **A.**   The department's policy says that I'm to inventory areas

6   known to contain property.

7   **Q.**   Let me stop you there for a moment.

8   **A.**   So I don't know.

9   **Q.**   If you don't mind, may I stop you for a moment?

10  **A.**   Sure.

11  **Q.**   So your whole purpose was to go investigate the firearm?

12  **A.**   I believe that's probably a pretext reason.

13  **Q.**   You most certainly weren't doing anything at that point in

14  the secondary search, inventory search to protect the interests

15  of the vehicle owner, correct?

16  **A.**   Well, it would probably expose him to liability as well if

17  he had an unsecured firearm taken from his vehicle and used.

18  **Q.**   Let me ask you this question:  The only information you

19  had in regard to where this information came from was or where

20  this firearm came from was from an informant, correct?

21  **A.**   I don't know if I would call him an informant.  He was

22  a --

23  **Q.**   He was a co-occupant in the car, correct?

24  **A.**   Correct.

25  **Q.**   Okay.

Motion to Suppress hrg.                    2/9/2022

1    And he told you this way after the car had been towed,
2  well after the arrest has been done and both persons are in
3  police custody, correct?
4  **A.**   Yes.
5  **Q.**   Now, you had already conducted one inventory, correct?
6  **A.**   Yes, sir.
7  **Q.**   Okay.  And you had inventoried everything that was in the
8  car, correct?
9  **A.**   Well, no.
10 **Q.**   At that point, from what you knew, you had inventoried
11 everything in the car the first time?
12 **A.**   As far as I knew at the time, yes.
13         **THE COURT:**  Can I ask a question?  The first
14 inventory search, was it conducted entirely pursuant to your
15 department's inventory policy?
16         **THE WITNESS:**  Yes, sir.
17         **THE COURT:**  So to the extent your department's
18 inventory policy tells you to search some part of the car, you
19 would have done that during the first inventory search,
20 correct?
21         **THE WITNESS:**  Yes, sir.  It says to inventory the
22 vehicle and any areas of the vehicle that are known to contain
23 property.  It says, "known to contain property."
24         **THE COURT:**  Okay.
25

USA v Garza, Case No.21-20405

Motion to Suppress hrg.                          2/9/2022

1  **BY MR. LONGSTREET:**

2  **Q.**   All right.  And you would say, to your own credit, the

3  first time, you did a thorough inventory search?

4  **A.**   Yes.

5  **Q.**   Okay.  And the only way that the second inventory search

6  was necessitated was the information you received from a

7  co-occupant slash informant?

8  **A.**   Yes, sir.

9  **Q.**   Otherwise, you wouldn't have done it, correct?

10  **A.**   That's correct.

11  **Q.**   All right.  So the purpose of going out there was to check

12  the accuracy of your informant's information?

13  **A.**   It was to recover any firearm that might be present where

14  he said it could be located at.

15  **Q.**   Okay.

16          **MR. LONGSTREET:**  I just want to make sure I covered

17  everything.

18          **THE COURT:**  Take your time.

19          **MR. LONGSTREET:**  Thank you.

20          Defense has no further questions.  Thank you.

21          **THE COURT:**  All right.  Mr. DePorre, do you have any

22  follow up?  I have just a couple.  Do you mind if I ask mine

23  first?

24          **MR. DePORRE:**  If you'd go first, then I can...

25          **THE COURT:**  Officer Fisher, can you tell me when the

Motion to Suppress hrg.                    2/9/2022

1  car is sitting in the impound lot, was it locked?

2          **THE WITNESS:**  No, sir.

3          **THE COURT:**  Is the impound -- excuse me, impound lot

4  itself fenced in?

5          **THE WITNESS:**  No, sir.

6          **THE COURT:**  Why not apply for a warrant to search the

7  car, the engine compartment, for the gun when you received that

8  information from the co-occupant of the car?

9          **THE WITNESS:**  These -- investigations like this

10  are -- they do take a lot of time.  I believe that incident

11  took place at 9:15 in the morning, and even being that early, I

12  didn't make it to my end of my shift at 6:00, with cataloging

13  property and typing the report, which has to be done before I

14  leave, and our department is not large.  We don't really have

15  extra people around to help out with that stuff, and then --

16  and then type up search warrants and, basically, handle my

17  investigation for me.

18          Honestly, it was the most efficient way that I

19  believe that it would go is I believe that I had the authority,

20  under the inventory search exception to the search warrant

21  rule, to go back and search the engine compartment, because it

22  is not an area typically known to contain property, as my

23  department's policy says.  With the information that there

24  could potentially be that property there, I believe that fell

25  under my department's inventory search policy, and, with that

Motion to Suppress hrg.                    2/9/2022

1   exception, I went ahead and used it and conducted that

2   secondary inventory search.

3           **THE COURT:**  Is there any other reason that you did

4   not apply for a warrant, other than what you just told me?

5           **THE WITNESS:**  No, sir.

6           **THE COURT:**  All right.  Thank you.

7           Mr. DePorre?

8           **MR. LONGSTREET:**  I'll stipulate to the admission of

9   the Government's Proposed Exhibit.

10          **MR. DePORRE:**  This is the problem with continued

11  hearings.  I have no idea the number you left off at, your

12  Honor?

13          **MR. LONGSTREET:**  You left off on Government's Exhibit

14  12, that being Government's 13.

15          **MR. DePORRE:**  For safety purposes, I would like to

16  mark this as Government Exhibit 20.  I know I didn't get that

17  high, and it is the inventory search policy for the Metro

18  Police Authority of Genesee County.

19          At this point, with no objections from brother

20  counsel, I would move for its admission.

21          **THE COURT:**  Okay.  That's admitted.  Thank you.  Do

22  you happen to have an extra copy that I could read along with?

23  I don't want to take your only copy.

24          **MR. DePORRE:**  What I intended to do is submit a copy

25  with the supplemental briefing that I anticipate the Court will

Motion to Suppress hrg.                              2/9/2022

1   request.  This is my only copy.  You're welcome to have it

2   right now.

3              THE COURT:  Do you need it to ask your questions?

4              MR. DePORRE:  No.

5              THE CLERK:  I can go make a copy.

6              THE COURT:  Officer Fisher has his copy.  So do you

7   mind if I see yours while you're asking?

8              Thank you for sharing it.

9              MR. DePORRE:  And I have no -- unless the Court

10  has -- I'll give you a moment, your Honor, to look that over,

11  and then if you have further questions, you can.  Otherwise, I

12  have no questions for the witness.

13             THE COURT:  Okay.

14             Did you have questions on this policy?

15             MR. DePORRE:  I do not.  I just wanted to enter it as

16  an exhibit.  Brother counsel stipulated to it or agreed to its

17  admission.  Therefore, I don't have any questions for the

18  witness.

19             THE COURT:  All right.  Mr. Longstreet, do you have

20  any questions about this policy?

21             MR. LONGSTREET:  Sir, no, sir.

22             THE COURT:  Okay.  I have a couple.

23             Officer Fisher, do you have the policy in front of

24  you?

25             THE WITNESS:  I do.

Motion to Suppress hrg.                        2/9/2022

1        **THE COURT:**  In your answers this morning, I
2   understood you to say that the policy provides that you are to
3   inventory the areas of the vehicle that, in your words, are
4   "known" to contain property.  Can you direct me to where that
5   language is in this policy?
6        **THE WITNESS:**  Yes, sir.  It's going to be under
7   Section VIII; it's a Roman numeral.  So it's under inventory --
8   it says "inventorying vehicles."
9        **THE COURT:**  I'm sorry, are you looking at me?  I
10  looked at number VII.  I don't see those words.
11       **THE WITNESS:**  It's under -- I was waiting for you to
12  read it, sir.  So VIII-A1 -- I guess I'll read it.
13       It says, "All areas of the vehicle which may contain
14  property, including any containers, shall be checked."
15       **THE COURT:**  Okay.
16       **THE WITNESS:**  I used "known to contain."  Obviously,
17  here, it's "which may contain."
18       **THE COURT:**  Okay.  Is it your standard policy when
19  conducting an inventory search -- let me try a better question.
20       Is it your department's standard practice, when
21  conducting an inventory search under the policy that we've
22  admitted as Exhibit 20, to search the engine compartment?
23       **THE WITNESS:**  No, not typically, sir.
24       **THE COURT:**  Okay.  I don't think I have any other
25  questions.

Motion to Suppress hrg.                    2/9/2022

1          **MR. DePORRE:**  I just have then one quick follow up.

2                    **REDIRECT EXAMINATION**

3  BY MR. DePORRE:

4  **Q.**   Officer Fisher, why don't you normally check the engine

5  compartment of a vehicle while conducting an inventory search

6  pursuant to your department's policy?

7  **A.**   So I've been waiting for the right question to I guess

8  bring this in.  I wasn't really directly asked.  So the only

9  place that is usually checked in the engine compartment, if it

10  is checked at all, is usually the -- we call it the air box or

11  where your air filter is, because that is an area that weapons

12  contraband drugs have been found in the past.

13          I opened the hood at the scene, checked the air box and

14  then closed it back up, shut the hood.  So that is the only

15  part of under the hood that was checked at the scene, but

16  typically, beyond that, the engine compartment isn't searched

17  at all.

18  **Q.**   And once you received additional information regarding the

19  possibility that there was a gun in the hood area of the

20  vehicle, did you conduct a more thorough search of the engine

21  compartment?

22  **A.**   Yes, sir.

23  **Q.**   And did that include areas of the engine compartment other

24  than the air box?

25  **A.**   Yes, sir.

Motion to Suppress hrg.                    2/9/2022

1   **Q.**   In addition to the information -- I'm going to go back.

2        When you conducted the first inventory search of the

3   vehicle at the Meijer parking lot, did you find ammunition

4   within the vehicle?

5   **A.**   Yes, sir.

6   **Q.**   Do you recall the caliber?

7   **A.**   I do not.

8   **Q.**   Did you find multiple rounds of ammunition?

9   **A.**   I believe I only found one.

10  **Q.**   And do you recall where it was located?

11  **A.**   It was between the driver's seat and the center console.

12  **Q.**   If someone were to have an item in their pocket, would

13  that be a likely -- and the item fell out of their pocket,

14  their front right pants pocket, would that be a location where

15  items would commonly fall out of a right front pants pocket?

16           **MR. LONGSTREET:**  I would object.  The question calls

17  for speculation.

18           **THE COURT:**  You can try to lay a foundation.  You can

19  ask if he had experience of stuff falling out of his pocket.

20           **MR. DePORRE:**  Certainly.

21  **BY MR. DePORRE:**

22  **Q.**   Have you ever had anything fall out of your right front

23  pants pocket while in a motor vehicle?

24  **A.**   Yes, sir.

25  **Q.**   And did it fall right between the center console and the

Motion to Suppress hrg.                    2/9/2022

1   driver's seat, assuming that were you in the driver's seat when

2   it happened?

3   **A.**   Yes, sir.

4   **Q.**   Did you in fact speak with, not just one, but two separate

5   other individuals, besides Mr. Garza, after the shoplifting

6   arrests?

7   **A.**   Yes, sir.

8   **Q.**   And one of the individuals was arrested at the scene with

9   Mr. Garza?

10   **A.**   Yes.

11   **Q.**   And there was another individual who was in Meijer at the

12   time that Mr. Garza was arrested?

13   **A.**   Yes.

14   **Q.**   Did you speak with that individual?

15   **A.**   Yes, I did.

16   **Q.**   And did that individual give you information about

17   Mr. Garza opening the hood compartment to his vehicle at some

18   point?

19   **A.**   Yes, he did.

20           **MR. DePORRE:**  I have no further questions.

21           **THE COURT:**  Mr. Longstreet?

22           **MR. LONGSTREET:**  No questions, Judge.

23           **THE COURT:**  I just have a couple last questions.

24           Officer, the first inventory search that was

25   conducted, was that while the vehicle was still in the Meijer

Motion to Suppress hrg.                    2/9/2022

1   parking lot?

2            **THE WITNESS:**  Yes, sir.

3            **THE COURT:**  And then Mr. DePorre's very last set of

4   questions to you was about information from a third person who

5   was in Meijer.  Do you recall he just asked you that?

6            **THE WITNESS:**  Yes, sir.

7            **THE COURT:**  And I think you indicated that this third

8   person provided information about Mr. Garza opening the hood of

9   the vehicle; is that correct?

10           **THE WITNESS:**  Yes, sir.

11           **THE COURT:**  When did you receive the information from

12   the third person about Mr. Garza opening the hood of the

13   vehicle, was that before you conducted the first inventory

14   search?

15           **THE WITNESS:**  No, sir.

16           **THE COURT:**  When was it, was it between the first

17   inventory search and the second inventory search?

18           **THE WITNESS:**  It was.

19           **THE COURT:**  Okay.  Thank you.

20           Anything else, Mr. DePorre?

21   **MR. DePORRE:**  Not for the Government, your Honor.

22   **THE COURT:**  Mr. Longstreet?

23           **MR. LONGSTREET:**  Okay.  Not from the Defense.  Thank

24   you.

25           **THE COURT:**  Thank you for coming back a second time,

Motion to Suppress hrg.                              2/9/2022

1   Officer.  Appreciate your time.

2                    (Witness excused 10:24 a.m.)

3              **THE COURT:**  Okay.  So Mr. DePorre, I guess we were

4   going to decide at this point what our next steps are, and,

5   based on the testimony that's come in today, would it be your

6   intention to call an additional witness?

7              **MR. DePORRE:**  No, your Honor.  I do not intend, at

8   this point, to call any further witnesses.

9              **THE COURT:**  All right.  Mr. Longstreet, would you and

10  Mr. Garza care to call any witnesses in connection with this

11  hearing?

12             **MR. LONGSTREET:**  At this time, no.

13             **THE COURT:**  All right.  I just want to be clear.  At

14  this time, meaning the way I'm thinking is, since the

15  Government is resting, this would be your opportunity to

16  present evidence, which I'm happy to have you present, but if

17  you don't do it now, I wouldn't see another reconvening of an

18  evidentiary hearing for you to present evidence.

19             **MR. LONGSTREET:**  Let me be more specific:  I don't

20  believe there's any evidence at this point that the Defense

21  needs to present.  Everything has been presented through

22  Officer Fisher, and the Defense is prepared to proceed.

23             **THE COURT:**  All right.

24             So you're satisfied with the record that has been

25  created thus far, and you're ready move ahead to the legal

USA v Garza, Case No.21-20405

Motion to Suppress hrg.                          2/9/2022

1    argument portion of these proceedings?

2              **MR. LONGSTREET:**  Sir, yes, sir.

3              **THE COURT:**  Thank you.  Okay.

4              Mr. DePorre, you had briefly referenced the idea of

5    supplemental briefs.  I think that makes sense, especially

6    given the gap of time between the two hearings.  I have

7    definitely memory of the first hearing, but seeing the actual

8    testimony transcribed and addressed in a brief would be very

9    helpful.

10             Mr. Longstreet, do you agree that supplemental

11   briefing is in order here?

12             **MR. LONGSTREET:**  That is absolutely necessary, and I

13   would ask, before I make any legal arguments, that we get the

14   transcript first.

15             **THE COURT:**  Oh, yes, yes.  What I'm -- the order of

16   operations that I'm thinking of here is we order the

17   transcript, and then once everybody has the transcript, the

18   supplemental briefs are filed.  I'll look at the briefs and

19   decide if I need additional oral argument or if I can just

20   decide it on the brief.

21             Does that work for you, Mr. DePorre?

22             **MR. DePORRE:**  Yes, your Honor.

23             **THE COURT:**  Mr. Longstreet?

24             **MR. LONGSTREET:**  That works for the Defense, yes.

25             **THE COURT:**  So do we know, has anybody ordered the

Motion to Suppress hrg.                    2/9/2022

1   first transcript?  Mr. DePorre, have you?

2         **MR. DePORRE:**  We have not.  That first transcript was

3   done with a different court reporter, who -- than the second

4   transcript.  However, we intend to order that today, and we

5   will also order this transcript today.

6         What we would ask is that the parties -- I know it's

7   Mr. Longstreet's motion, and he, at the original hearing,

8   addressed to the Court that he wanted an opportunity to

9   supplement his papers and briefings to address any potential

10  issues he sees with the second inventory search, and so my

11  proposal would be that he have, I would suggest, 21 days from

12  the time that the transcript is completed for both hearings.

13  So that 21 days from the latter of the two transcripts to

14  submit a supplemental brief, and then I would have 14 days to

15  respond to that.

16        **THE COURT:**  Mr. Longstreet, does that work for you?

17        **MR. LONGSTREET:**  Depending on how long the transcript

18  is, that timetable would be agreeable.  In regards to 21 days,

19  depending upon how long the transcript is, I may want more

20  time, depending on how long it takes to do the research, I may

21  want more time.

22        **MR. DePORRE:**  And I would certainly be amenable to

23  stipulate to additional time if Mr. Longstreet needs it.

24        **THE COURT:**  And I'd be happy to give you more time.

25  Why don't we start with this:  Our plan will be the transcripts

Motion to Suppress hrg.                    2/9/2022

 1   will be ordered today.  At some point, they'll be filed on the

 2   docket.  Our current schedule would be Mr. Longstreet will file

 3   a supplemental brief 21 days from the date that the second

 4   transcript is filed on the docket, and Mr. DePorre would

 5   respond within 14 days.  Mr. Longstreet, if you're getting in

 6   the vicinity of the 21 days and need more time, it's not a

 7   problem.  Just reach out to Miss Monda -- Mrs. Ryan is her name

 8   now, telling how much time you want and copy Mr. DePorre, and

 9   it will be fine.

10           Mr. DePorre, same thing for you.  If you're getting

11   close to your 14 days and you're jammed for some reason or

12   another and you need a little extra time, that won't be a

13   problem.

14           **MR. DePORRE:**  Thank you, your Honor.

15           **THE COURT:**  But we'll start with this time frame.

16   That work for you, Mr. Longstreet?

17           **MR. LONGSTREET:**  It does, sir.

18           **THE COURT:**  Okay.  Let's talk about, certainly,

19   issues that would be important to hit on in the supplemental

20   briefs.  Today, we were focused a lot on the issue of this

21   inventory search, and I understood this to come up, if memory

22   serves, at the last hearing, Mr. DePorre, you were suggesting

23   that this inventory search is an independent basis to admit the

24   weapon or an inevitable discovery or some combination of the

25   two.  I think one of the points that -- first of all, you guys

USA v Garza, Case No.21-20405

Motion to Suppress hrg.                    2/9/2022

1    brief whatever you think is appropriate, because you guys are

2    the lawyers, but as I sit up here today, one of the things I'm

3    thinking about is whether the second search qualifies as an

4    inventory search, and I assume Mr. Longstreet will be

5    developing the argument that it wasn't an inventory search

6    because it was based on a tip, it wasn't based on their policy.

7    It wasn't part of the original search.  You'll be developing

8    that argument.

9          There have to be cases like this where there's an

10   original inventory search, additional information, and a second

11   search, and federal courts are figuring out whether that second

12   search also falls within the inventory search doctrine.  So

13   what would be really helpful, on this particular aspect of the

14   dispute, is trying to find cases that are factually as similar

15   to this as we can find.  That's one thing that would be very

16   helpful to me in thinking through this.

17          **MR. DePORRE:**  Your Honor, I have two cases I can just

18   give to the Court and to Mr. Longstreet at this point.  They

19   support the Government's position, but the first is an Eastern

20   District of Michigan case *United States V Dowl*.  It's 229

21   F.Supp. 3rd 603 (2017) authored by --

22          **MR. LONGSTREET:**  You said 229 F.Supp. what?

23          **MR. DePORRE:**  229 F.Supp. 3rd at 603.  It's a 2017

24   case authored by Judge Rosen -- Chief Judge Rosen, and then

25   that case cites two Supreme Court cases, *Michigan V Thomas*,

Motion to Suppress hrg.                    2/9/2022

1   which is at 458 U.S. 259 (1982) and *Florida V Meijer's*, which

2   466 U.S. 380 (1984).

3            **THE COURT:**  And you're suggesting, Mr. DePorre, is

4   that these are cases that are dealing with inventory searches

5   or claimed inventory searches that occurred in two parts?

6            **MR. DePORRE:**  Yes, your Honor, and also address the

7   automobile exception as applied to impounded vehicles.

8            **THE COURT:**  Okay.  Well, that's helpful.  So you can,

9   again, Mr. Longstreet, find whatever cases you think are

10  helpful, but you can anticipate Mr. DePorre's reliance on those

11  and address those cases.

12           **MR. LONGSTREET:**  We will.

13           **THE COURT:**  Anything else, Mr. DePorre, for the

14  record today?

15           **MR. DePORRE:**  Not on behalf of the Government.

16           **THE COURT:**  Mr. Longstreet?

17           **MR. LONGSTREET:**  Nothing on behalf of the Defense.

18           **THE COURT:**  Okay.  Thank you both for your work

19  today.  I will look forward to reading these briefs, and we

20  will convene oral argument on the legal issues if I think it's

21  necessary after viewing the briefs.

22           Thank you very much.

23           We are adjourned.

24           **THE CLERK:**  All rise.  Court is in recess.

25                    (Proceedings concluded 10:32 a.m.)
                              - - -

Motion to Suppress hrg.                        2/9/2022

1                    **C E R T I F I C A T I O N**

2            I, Andrea E. Wabeke, official court reporter for the

3    United States District Court, Eastern District of Michigan,

4    Southern Division, appointed pursuant to the provisions of

5    Title 28, United States Code, Section 753, do hereby certify

6    that the foregoing is a correct transcript of the proceedings

7    in the above-entitled cause on the date hereinbefore set forth.

8    I do further certify that the foregoing transcript has been

9    prepared by me or under my direction.

10   /s/Andrea E. Wabeke              March 27, 2022
     Official Court Reporter          Date
11   RMR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25

USA v Garza, Case No.21-20405