**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,
        Plaintiff,                    CRIMINAL NO.  21-20405
                                               HONORABLE MATTHEW F. LEITMAN
       v.

NOE GARZA,
        Defendant.
_____/

## SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT NOE GARZA'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

NOW COMES the Defendant, NOE GARZA ("Defendant GARZA"), by and through standby-by counsel, CHARLES LONGSTREET, II, per this Honorable Court's invitation at the February 9, 2022, Evidentiary Hearing respectfully submit the following Supplemental Brief in support of their Motion to Suppress Physical Evidence filed with the court on September 7, 2021, ECF Nos 15. As the hearing made clear, Defendant's initial position that Defendant Garza was stopped, arrested, and searched without probable case, in direct violation of his Fourth Amendment rights against unreasonable search and seizure is correct. In addition, the government was unable to provide a valid exception to the Fourth Amendment's search warrant requirement that would permit suppress of the evidence.

I.    THE PHYSICAL EVIDENCE SHOULD BE SUPPRESSED BECAUSE THE OFFICERS LACKED PROBABLE CAUSE TO ARREST DEFENDANT AND SEARCH DEFENDANT'S VEHICLE

      The Defendant's Opening Brief raised two Fourth Amendment claims: (1) that the physical evidence should be suppressed because there was no probable cause to believe that Defendant Garza was engaged in criminal activity and (2) the evidence should be

suppressed because it was seized subject to an unlawful arrest, also lacking in probable cause. These issues were further addressed during the Evidentiary Hearings on December 12, 2021, and February 9, 2022.

The probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir.1999); *see also Hunter v. Bryant,* 502 U.S. 224, 228 (1991). It is not necessary that an officer provide evidence sufficient to establish guilt, however, an officer's good faith alone is not enough to establish probable cause. *Brinegar* at 169. Instead, probable cause exists "if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry* at 102 citing *Carroll v. United States*, 267 U.S. 132, 156 (1925).

Given the facts and circumstances known to Officer Smith and Sergeant Johnson at the time of the arrest, there was insufficient probable cause to believe that Defendant Garza was engaged in criminal activity. First, the suspect in question was not observed concealing merchandise and was simply suspected by loss prevention of doing so. When asked if he was told this by the Meijer staff, Officer Smith replied, "That information was not relayed to me." Transcript of December 21, 2021, Evidentiary Hearing [hereinafter "T 12/21/21"] Pg. 24 Ln 3. However, Officer Smith did confirm that the loss prevention report said "that 'Sergeant Johnson was told by Ms. Montpas that they did not have concealment of the items.'" Transcript of Feb. 9, 2022, Evidentiary Hearing [hereinafter "T 2/9/22"], Pg. 11 Ln 22-23.  Officer Smith testified: " Sergeant Johnson and I walked with Ms. Montpas toward the front of the store" T 12/21/21, Pg. 22 Ln 14-16 and that he

2

and Sergeant Johnson "exited the store through the west doors and walked in the direction that was relayed to us that the suspect went" *Id.* Pg. 23 Ln 16-17. Even if this information was not relayed directly to Officer Smith, it was given to Sgt. Johnson and yet both continued to approach the vehicle when no loss prevention staff had seen merchandise being concealed.

Second, Defendant Garza, by Officer Smith's own admission, was not seen inside the store and did not match the description of the suspect provided by the Meijer staff. Officer Smith testified that "Mr. Garza was not in the store, no." T 2/9/22, Pg. 14 Ln 22. He later reiterated that "[Garza] was not the person in the store." *Id.* Pg. 16 Ln 15-16. When asked if Defendant Garza matched the description of the suspect form loss prevention, he responded "no." T 2/9/22, Pg. 16, Ln 9. Furthermore, despite testifying to his previous knowledge and experience of retail fraud suspects having a lookout in the parking lot (*See* T 12/21/21, Pg.19 Ln 12 -Pg. 20 Ln. 1), when asked if he had any indication or reason to believe that Defendant Garza was acting as a lookout, he responded that he "ha[d] no information of that." T 2/9/22, Pg. 17 Ln 21.

The only information the officers had was that a white male that was possibly suspected of theft had entered a White Grand Prix, and it was with this very limited information that they arrested Defendant Garza, who did not match the description, was never outside of his vehicle, inside the store, or acting in such a way consistent with a retail theft lookout. Defendant Garza was simply the "only one person that [Officer Smith] observed" when he approached the vehicle. T 12/21/21 Pg. 29 Ln 11-13. Absent any further investigation or independent information, the facts, and circumstances here are insufficient to establish probable cause of a crime. Further, Officer Smith's own

3

testimony further supported that information provided was unrelated to Defendant Garza and failed to produce any reasonable justification of probable cause that Defendant Garza himself was in any way involved in the commission of any crime.

Under these circumstances, the arrest, and subsequent search incident to arrest, of Defendant Garza was conducted unlawfully and without the requisite probable cause, in direct violation of Defendant Garza's Fourth Amendment rights.

II. THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT DOES NOT APPLY BECAUSE THERE WAS NO PROBABLE CAUSE TO BELIEVE THAT EVIDENCE OF A CRIME WOULD BE FOUND WITHIN THE VEHICLE

The Fourth Amendment generally requires police to obtain a warrant prior to searching property. U.S. CONST. amend. IV. There are well-recognized exceptions to this requirement, however, one being the "automobile exception." *California v. Acevedo*, 500 U.S. 565, 578 (1991). While the exception is broad, there are some restrictions. It has long been held that to conduct a warrantless search of a vehicle, officers must "have 'reasonable or probable cause to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 222 (1968). Probable cause for a search exists when "there is a fair probability that an officer will find contraband or evidence of illegal activity at a specified location based on the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Courts have held that "the right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *United States v. Carrol,* 267 U.S. 132, 158-159 (1925). In the case at hand, absent the unlawful

4

arrest of Defendant Garza, Officer Smith would not have had any reason to search his vehicle. For the reasons previously stated above, Officer Smith's testimony failed to establish probable cause linking Defendant Garza a crime, let alone the suspected theft in question. Prior to the unlawful search of Defendant Garza's person, on which Officer Smith found Suboxone tablets, the facts and circumstances would not have led officers to believe that contraband or evidence would be found within the vehicle. Again, the search was carried out based on vague information regarding a possible theft, where the officers arrested the first person they encountered in a suspected vehicle without any additional investigation or inquiry to confirm Defendant Garza's identity or involvement. It was not until after said unlawful arrest and search occurred that the officers potentially established probable cause sufficient to justify a warrantless search under the automobile exception.

### III. THE SECOND INVENTORY SEARCH WAS UNLAWFUL AND CARRRIED OUT IN VIOLATION OF THE FOURTH AMENDMENT

Another exception to the warrant requirement is an inventory search. An inventory search is "a recognized exception… where the police are in lawful custody of a vehicle, they may conduct an inventory search to catalogue its contents pursuant to standardized criteria." *United States v. Alexander*, 954 F.3d 910, 915 (2020), citing *Florida v. Wells*, 495 U.S. 1, 4 (1990). The purpose of an inventory search is to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 371-74 (1987). There are "no temporal or numerical limitations on inventory searches." *United States v. Dowl*, 229 F. Supp. 3d 603, 611 (2017). However, "when a vehicle is searched solely for the purpose of investigating criminal conduct that validity

5

of the search will be dependent on the application of the probable cause and warrant requirements of the Fourth Amendment." Id. citing *Bertine*, *supra* at 371. The inventory search exception does not apply in the case at hand because the vehicle was not in lawful custody. Even if this Honorable Court finds the officers gained legal custody of the vehicle, the second inventory search was conducted solely for investigative purposes and thus required a warrant.

### A. The vehicle was not in lawful police custody

A warrantless inventory search may be conducted only in situations where police have "lawfully take[n] custody of the vehicle." *United States v. Hockenberry*, 730 F.3d 645, 658 (2013). Officer Smith testified that "any time [he has] law enforcement interactions with a subject, [he] perform[s] a LIEN, SOS checks, check for license statuses, warrants." T 12/21/21 Pg. 36 Ln 10 – 12. As previously argued in Defendant's Original Brief submitted ECF Nos 15, Officer Smith and Sgt. Johnson had no reasonable suspicion or probable cause to believe that Defendant Garza was involved in criminal activity, and thus there was no reason for Officer Smith to interact with Defendant Garza in a manner that would require a LIEN check, determining that the vehicle was not registered. Similarly, while the department's policy and procedures manual require impounding a vehicle to "preserve evidence of a crime" or for "safekeeping following the arrest or detention of the driver" (*See* T 2/9/22, Government Exhibit 20, Pg. 1), because there was no lawful arrest or detention of Defendant Garza, his vehicle was not in lawful custody.

### B. The second inventory search was conducted for investigatory purposes and not in accordance with the department's policies and procedures regarding inventory searches of impounded vehicles

6

If this court finds that the vehicle was correctly impounded and in lawful police custody, the inventory search exception still fails with respect to the second inventory search at the impound lot, because it was conducted solely to uncover evidence of a crime. When carrying out an inventory search, officers must conduct the search "according to standard police procedures" and the search must be "sufficiently tailored to only produce an inventory." *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012). Further, the search should be conducted in good faith and not as pretext for a criminal investigation to discover evidence of criminal activity. *South Dakota v. Opperman*, 428 U.S. 376 (1976).

In the case at hand, two inventory searches were conducted. The first search in the Meijer parking lot was conducted correctly for cataloguing purposes and was completed according to the department's policies and procedures, which states that "(A) All impounded vehicles shall be inventoried by one of the investigating officers… (B) A vehicle inventory form shall be completed on each vehicle inventoried by an officer… (C) Items of unusual value will be held to protect the owner's interest." T 2/9/22, Government Exhibit 20, Pgs. 4-5.

Officer Smith testified that his first inventory search was completed pursuant to department policy and that he took inventory of "the vehicle and any areas of the vehicle known to contain property." T 2/9/22 Pg. 24 Ln 21-23. Officer Smith stated that after the first search, he had inventoried the everything in the car "as far as [he] knew at the time." *Id.* Pg. 24, Ln 12. He further testified "the only place that is usually checked in the engine compartment, if it is checked at all, is usually the… we call it the air box or where your air filter is because that is an area that weapons, contraband drugs have been found in the

past." *Id.* Pg. 30 Ln 8-12. While it was standard practice to check the air box under the hood, as that area of a vehicle has been known to or may contain property, he stated that "typically, beyond that, the engine compartment isn't searched at all" when cataloging the contents of a vehicle. *Id.* Pg. 30, Ln 14-17. As a result, Officer Smith did not search the engine compartment when conducting his initial on-scene inventory search and only returned to investigate this area of the vehicle later, after receiving information from another defendant in this case. *Id.* Pg. 30 Ln 18-22. In fact, when specifically asked if that was his sole purpose, to investigate a tip from an informant regarding a potential firearm, he responded "I believe that's probably a pretext reason." *Id.* Pg. 23, Ln 12.

As such, when conducting this second search, Officer Smith went outside of the "standardized criteria" or "established routine" required of a warrantless inventory search, veering into "uncanalized discretion". *See Florida v. Wells*, 495 U.S. 1, 4 (1990). Officer Smith further testified that he chose not to apply for a warrant given time and personnel restraints and that he believed this was the most efficient way to search that area. Specifically, he stated: "Honestly, it was the most efficient way that I believe that it would go is I believe that I had the authority, under the inventory search exception to the search warrant rule, to go back and search the engine compartment, because it is not an area typically known to contain property, as my department's policy says." *Id.* Pg. 26, Ln 18-23.

Although his department policy was to inventory areas that may contain property, Officer Smith used his own discretion to return to the vehicle and conduct a second, warrantless search of an area that was admittedly not regularly inventoried and not known to contain property, and that he did so only to investigate information provided by

8

an informant. At this point, the search was no longer sufficiently tailored just to produce inventory, but instead was conducted for the sole purpose of efficiently uncovering evidence of criminality, which requires probable cause and a search warrant under the Fourth Amendment. For these reasons, the warrantless search of Defendant's vehicle was improper and in direct violation of the Fourth Amendment.

WHEREFORE, Defendant GARZA respectfully requests that this Court grant Defendant's Motion to Suppress Physical Evidence.

Respectfully Submitted,

s/ *Charles Longstreet*, II
Charles Longstreet, II
Attorney for Defendant
LONGSTREET LAW PLLC
18971 Livernois Rd.
Detroit, Michigan 48221
Email:Clongstreet2@longstreetlawfirm.com
Phone: 313-288-0103

Dated: May 24, 2022

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,
            Plaintiff,         CRIMINAL NO.
                              HONORABLE
    v.

NOE GARZA,
            Defendant.
_____/

## CERTIFICATION

      I hereby certify that the forgoing papers were electronically filed this date, served electronically or by mail to the following:

**AUSA JONATHAN TUCKEL**
United States Attorneys Office
211 West Fort Street, Suite 2001
Detroit, MI 48226
jonathan.tukel@usdoj.gov

Date:                            By: