UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

NOE GARZA,

                Defendant.

CASE NO: 21-CR-20405

HON. MATTHEW F. LEITMAN
United States District Judge

HON. CURTIS IVY, JR.
United States Magistrate Judge

_____

**United States of America's Supplemental Brief in Opposition to Defendant's Motion to Suppress Physical Evidence (ECF No. 15)**
_____

Police officers legally arrested Noe Garza and conducted a legal and proper search of his pockets and car, which they impounded. After officers learned additional information about a gun in Garza's car, they legally conducted a follow-up search of the car's engine compartment. During the searches, officers found a 9mm caliber pistol with a scratched-off serial number in the car's engine compartment, a 9mm bullet on the floor of the car next to the driver's seat, and buprenorphine which is a controlled substance in Garza's pocket.

Garza was federally indicted and filed a motion to suppress all of the physical evidence. After initial briefing, the Court conducted an evidentiary hearing. The facts from that hearing establish that police had probable cause to arrest Garza and they legally searched his pockets and car. The Court should deny Garza's motion to suppress.

**Background**

On Thanksgiving 2020, Police Officer Steven Fisher and Sergeant Todd Johnson were at a Meijer store on Hill Road in Genesee County investigating a prior retail fraud incident. (Hrg. Tr., ECF No. 22, PageID.86 & 88). Officer Fisher, who had ten-years of experience as a police officer, had been to the Hill Road Meijer more than a dozen times to investigate prior shoplifting complaints. (ECF No. 22, PageID.85; 88-89).

Based on his experience and information from other officers, Officer Fisher knew quite a bit about shoplifting. He was aware that shoplifting is often a "team effort" and often committed by drug users. (ECF No. 22, PageID.91-92). He was aware that one person will often steal merchandise while another acts as a lookout and remains in a parked car in the store's parking lot. (ECF No. 22, PageID.92). Officer Fisher had arrested and interviewed "numerous retail fraud suspects" who told him that they use a lookout. (ECF No. 22, PageID.94). Officer Fisher also knew that after stealing items, shoplifters often change clothing—for example by putting on a jacket or sweatshirt—in order to conceal their identity. (ECF No. 22, PageID.101).

While Officer Fisher and Sergeant Johnson were meeting with a Meijer loss-prevention employee, the employee told officers "we have another person stealing right now." (ECF No. 22, PageID.96). A Meijer employee described the suspect as a

2

white male wearing gray clothing. (ECF No. 22, PageID.96). The officers went to the front of the store. (ECF No. 22, PageID.97). A Meijer employee told the officers that the suspect handed over some stolen property to a store employee before the suspect left, but the suspect did not allow the Meijer employee to look in the suspect's backpack for additional merchandise. (ECF No. 22, PageID.99).

The Meijer employee told the officers that the suspect exited the store and got into a white Pontiac Grand Prix in the parking lot. (ECF No. 22, PageID.98).

Officers went to the parking lot and found a White Pontiac Grand Prix. (ECF No. 22, PageID.98). It was the only white Grand Prix in the area. (ECF No. 22, PageID.104). Officer Fisher saw a person in the driver seat, later identified as Noe Garza, and directed him to get out of the car. (ECF No. 22, PageID.100 & 111). Garza complied and Officer Fisher placed him in handcuffs. (ECF No. 22, PageID.101). Officer Fisher searched Garza's person. (ECF No. 22, PageID.102). In one of the pockets, Officer Fisher found a stack of Suboxone (buprenorphine) sublingual tabs. (ECF No. 22, PageID.105).

Meanwhile Sergeant Johnson saw another occupant, identified herein as S-1, in the backseat of the Grand Prix. (ECF No. 22, PageID.104). Sergeant Johnson asked S-1 to step out of the car and he put S-1 in handcuffs. (ECF No. 22, PageID.107). After his arrest, S-1 asked to speak to the officers. (ECF No. 22, PageID.112). S-1

admitted he was shoplifting and said that Garza was a drug dealer and that there was a firearm in the Grand Prix. (ECF No. 22, PageID.112). S-1 also described another suspect, identified herein as S-2, who was in Meijer stealing merchandise. (ECF No. 22, PageID.112). Officer Fisher and Johnson called for another officer to come to the scene, and then they went back into Meijer and arrested S-2. (ECF No. 22, PageID.114-115).

Officer Fisher then searched the Grand Prix, which was still in the Meijer parking lot. (ECF No. 22, PageID.115). Officer Fisher found a 9mm bullet, along with stolen property from Meijer, suspected drugs and drug paraphernalia. (ECF No. 22, PageID.115-121). The bullet was between the driver's seat and the center console. (ECF No. 24, PageID.184). Officer Fisher also searched the "air box" of the engine compartment—where the air filter goes—because he had found property and contraband there in previous car searches. (ECF No. 24, PageID.183). He then closed the hood and did not search the rest of the engine compartment. (ECF No. 24, PageID.183).

While Officer Fisher searched the car, another officer queried the Grand Prix's registration information in LEIN, a law enforcement database, and determined the Grand Prix had an improper license plate. (ECF No. 22, PageID.122). A tow company then towed the Grand Prix to an unfenced impound lot. (ECF No. 22,

PageID.131).

After searching the car, Officer Fisher queried Garza in LEIN and found that he had active warrants for his arrest. (ECF No. 22, PageID.124).

Officer Fisher returned to his police station with the three alleged shoplifters and spoke to them. (ECF No. 22, PageID.128). S-1 explained that he and S-2 were drug users that were stealing items to pay Garza for heroin. (ECF No. 22, PageID.128). S-1 also repeated that he had seen Garza with a gun before they arrived at Meijer. (ECF No. 22, PageID.129).

S-2 denied seeing Garza with a gun, but said that he had seen Garza put something in the engine compartment and said that it may have been a gun. (ECF No. 22, PageID.130).

After learning that Garza had put something into the engine compartment, Officer Fisher and another officer went to the impound lot where they did a more thorough search of the Grand Prix. (ECF No. 22, PageID.132-133). Officer Fisher did not obtain a search warrant for the car because of time and resource constraints. (ECF No. 24, PageID.179). Officer Fisher believed he had authority for a search under the inventory search exception to the search warrant rule based on his department's policy. (ECF No. 24, PageID.179). That policy states: "All areas of the vehicle which may contain properly, including any containers, shall be checked." (ECF No. 24,

5

PageID.180-188; Gov't Ex. 20, Inventory Policy of Metro Police Authority of Genesee County, attached).

Officers went to the impound lot, unlatched the Grand Prix's hood and found a firearm in a mesh bag that was hidden behind the car's battery. (ECF No. 22, PageID.133).

A federal grand jury indicted Garza for being a felon in possession of a firearm (count 1), possessing a firearm with an obliterated serial number (count 2), and possessing with the intent to distribute buprenorphine (count 3). (Indictment, ECF No. 9, PageID.22-23). Garza filed a motion to suppress physical evidence (ECF No. 15) in which he claims that officers did not have probable cause to arrest him.

## Discussion

**Officer Fisher had probable cause to arrest the occupant of the white Pontiac Grand Prix.**

Officer Fisher lawfully arrested Garza. "An 'arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law.'" *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (quoting Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir.1988)). In determining whether Garza's arrest was supported by probable cause, "a reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that

there is a reasonable probability that illegality has occurred or is about to occur." *Strickland*, 144 F.3d at 415 (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

At the hearing, Officer Fisher testified he had probable cause to arrest the occupant of Garza's white Pontiac Grand Prix. (ECF No. 22, PageID.103-104). He explained that Meijer employees had told him credible information about a shoplifter. (*Id*.). Officer Fisher knew the employees and knew that their job was to observe and detect shoplifting. (*Id*.). He had information that a suspect had concealed merchandise based on the fact that the suspect had relinquished some of the merchandise to a store employee. (*Id*.). He knew that the suspect did not allow the Meijer employee to search the suspect or his backpack. (*Id*.). He knew the suspect had exited the store and entered a white Grand Prix. And when Officer Fisher approached the Grand Prix, he initially only saw one person—Noe Garza—in the car. (*Id*.).

The fact that Garza's clothes did not match the Meijer employee's description of the shoplifter did not undermine Officer Fisher's reasonable belief that that Garza had been engaged in shoplifting, because Officer Fisher knew that shoplifters often change clothes. (ECF No. 22, PageID.101). And even though Officer Fisher later realized that there was another occupant in the car, Officer Fisher knew from his prior experience that shoplifters work in teams and often use a lookout. (ECF No. 22,

PageID.94).

Officer Fisher had detailed and credible information that a shoplifting suspect had left Meijer and entered a white Pontiac Grand Prix. Based on all these facts, it was objectively reasonable for Officer Fisher to believe that the occupant of the Grand Prix had engaged in illegal conduct.

**Officer Fisher had a lawful basis to search Garza's person and to search the Grand Prix twice.**

Upon arresting Garza, Officer Fisher searched Garza's pockets, which was a lawful search incident to arrest. *See Chimel v. California*, 395 U.S. 752, 763 (1969).

Officer Fisher also lawfully searched Garza's automobile prior to having it towed from the Meijer parking lot, as required by his department's policy. By the time Officer Fisher searched the car, he knew it would have to be impounded because of its improper license plate, (ECF No. 22, PageID.122). And he had information from S-1 that S-1 was stealing merchandise from Meijer and that Garza was a drug dealer who had a firearm in the car. Thus, Officer Fisher had a legal basis to search the Grand Prix under the inventory search exception and the automobile exception. *See generally, Florida v. Wells*, 495 U.S. 1 (1990) (permitting inventory searches pursuant to a department policy); *California v. Acevedo*, 500 U.S. 565, 580 (1991) (permitting officers to search automobiles and containers in automobiles when there is probable cause that evidence of a crime is located in side the vehicle or container.)

And Officer Fisher lawfully searched the car's engine compartment a second time. Officer Fisher's interviews with S-1 and S-2 gave him reason to believe a gun was concealed the engine compartment of the Grand Prix, which was impounded in an unfenced lot. With this new information, Officer Fisher was reasonable in searching the engine compartment, because it was an "area which may contain property." Because there are "no temporal or numerical limitations on inventory searches," there was nothing improper about a second inventory search. *United States v. Dowl*, 229 F.Supp. 3d 603, 611 (E.D. Mich., 2017).

**Exclusion is not appropriate.**

Officer Fisher conducted lawful searches pursuant to his departmental policy. But even if the Court found some violation, suppression is not appropriate in this case.

The Supreme Court has noted that the exclusionary rule is a judicial remedy to "deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135 (2009). As such, it should not be applied in all cases. Rather, in "all suppression cases, all of the relevant facts and circumstances should be weighed in the balance; and the crucial finding needed to suppress evidence is whether 'police [mis]conduct [is] sufficiently deliberate that exclusion can meaningfully deter it,

and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (alterations in original). Here, none of Officer Fisher's actions warrant suppression of evidence.

                                                Respectfully Submitted,

                                                DAWN N. ISON
                                                United States Attorney

Dated: June 10, 2022             s/ *Jules M. DePorre*
                                                JULES M. DePORRE
                                                Assistant United States Attorney
                                                600 Church Street
                                                Flint, MI 48502
                                                Phone: 810-766-5177
                                                Fax:810-766-5427
                                                jules.deporre@usdoj.gov
                                                P73999

CERTIFICATE OF SERVICE

I hereby certify that on Friday, June 10, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered parties.

<u>s/Jules M. DePorre</u><br>
Assistant United States Attorney<br>
600 Church Street, Suite 200<br>
Flint, MI   48502